I think it entirely settled, that, if a mortgage be one which, by reason of the fraudulent purpose and intent with which it is executed, is declared void by statute, it is wholly void, notwithstanding it may include property as to which it would be valid if it could be regarded as a mortgage of that only. To speak more clearly, if a mortgage be given with the fraudulent intent to cover up and conceal from creditors a portion of the debtor's property, it is altogether void, notwithstanding it also includes land or other property in relation to which there is abona fide intent to convey it as security for an honest debt, and no other purpose and intent. A mortgage, void in part as a violation of the statute, is void altogether. (Goodrich v.Downs, 6 Hill, 439; Grover v. Wakeman, 11 Wend. 194;Fulton Bank v. Benedict, 1 Hall S.C. 480, 546; Jackson v.Packard, 6 Wend. 415; Rice v. Welling, 5 id. 595; Hammond
v. Hopping, 13 id. 505.) *Page 597 
It follows, that the instruction of the judge to the jury, that, as to the goods in the store, the mortgage was void, involved the further legal consequence, that it was altogether void.
If, therefore, the appellant is entitled, on this appeal, to insist upon that instruction as the law of this case, he has a right, thereupon, to claim that, as matter of law, his motion for a nonsuit should have been granted. If the instruction had proceeded upon the assumption that the defendant had shown, by extrinsic proof, that, in respect to the goods in the store, they were included in the mortgage, with intent to cover them, and hinder and prevent their being taken by creditors, while the stone were in fact mortgaged, in pursuance of a demand for security, and with bona fide intent that they should be held for that purpose, and no other, then we could not, on exception, examine the facts to see whether that fraud was sufficiently established. But, where it appears that the judge pronounced the instrument void on its face, because the mortgage itself "contemplated the sale of the goods in the store," we are at liberty to examine and see whether he gave a correct legal construction to the mortgage; and, if not, then, obviously, such instruction, by itself, did not prejudice the defendant, and we might disregard it, and determine the case on the other questions raised. So far from this instruction being of prejudice to the defendant, it was altogether in his favor; because, having told the jury that the mortgage was void as to the goods, he also told them that they might take that fact into consideration, in deciding as to the honesty and good faith of the mortgage. I think, however, that neither the mortgage nor the evidence warranted any such peremptory instruction. A stipulation that, until default, the mortgagor may remain in the full and free possession, and in the full and free enjoyment, of the goods, not only is not an authority to sell, but rather excludes such an idea. No direct proof was given of any express cotemporaneous agreement that the mortgagor might sell the goods. The circumstance that the plaintiff was at the store once after the mortgage was given, and saw, or most probably saw, sales taking place, *Page 598 
was, at most, a circumstance to be submitted to the jury as evidence of such prior agreement cotemporaneous with the execution of the mortgage. If it was a sale, in violation of the rights of the mortgagee, or even if it was consented to after the execution of the mortgage, it would not make the mortgage void: it would do no more than discharge the lien on the goods which he consented might be sold.
But I think that the defendant was entitled to submit to the jury the question, whether it was not according to the agreement and intention of the parties that the mortgagor should sell the goods in the store, and appropriate the sales to his own use; and, if so, then the instruction requested, that if, for this reason, the mortgage was void as to the goods, it was void also as to the other property, should have been given.
The mortgaged property was left in the possession of the mortgagee. He was a store-keeper, and the goods mortgaged embraced all his stock in trade — "all my goods and chattels now in my store." The mortgagor continued his business, selling goods and buying others, without keeping any separate account of sales of mortgaged goods. He did not pay over the proceeds to the mortgagee. The men whom he employed "traded and got goods after the mortgage was given." The plaintiff, when he took the mortgage, did not visit the premises or take any means of identifying the goods then in the store, so that he might distinguish them from any others which might be purchased by the mortgagor, nor do anything indicating that he did not suppose that the business of selling and "trading" would go on as theretofore. And, on the contrary, when he did go to the place, after the mortgage was given, he found the store open and the clerk in attendance, and does not appear to have made any objection or even inquiry. If this does not amount to express proof that he thereby knew that sales of the mortgaged goods were in progress, and the business was carried on without any regard to the mortgage, it certainly points strongly in that direction.
Now, I think it clear, that, if the only issue in this case had been, was this mortgage delivered and received upon an *Page 599 
understanding, and with the intent, that the mortgagor should continue to deal with the goods in the store as his own, "trading" with them, and selling as opportunity offered, and appropriating the avails to his own use, and the jury had found in the affirmative on that issue, their verdict could not be declared without sufficient evidence to support it. If not, then, the mortgage being altogether void, if void as to the goods, for the reason so found, the defendant was entitled to the instruction asked, and to have the jury pass upon the question.
Upon this ground, I think, the judgment should be reversed and a new trial granted.
All the judges concurring, except MILLER, J., not voting,
Judgment accordingly. *Page 600